AGATINA COLALILLO, PLAINTIFF-APPELLANT, v. WILLIAM KAISER, DEFENDANT-APPELLEE.

Decided June 7, 1927.

**Landlord and Tenant—Judgment for Defendant—Defendant Alleged Loss on Account of Plaintiff's Failure to Prevent Another Tenant from Competing With Defendant in His Business—Held, That the Agreement was in Contravention of the Statute of Frauds—Held Further, That it Clearly Appeared that the Parties Did Not Come to Any Agreement on the Terms of the Lease and That the Damages Claimed by Defendant were Based Upon the Term of a Proposed Lease, Which Could Not be Agreed Upon—Held Further, That the Nature of Damages Sustained by the Defendant was Highly Speculative—New Trial Ordered.**

On appeal from the First District Court of the city of Newark.

Before Justices KALISCH, KATZENBACH and LLOYD.

For the appellant, *Joseph Zemel* (*Harry Green,* of counsel).

For the defendant, *Howe & Davis* (*Edward L. Davis,* of counsel).

PER CURIAM.

This is an appeal from a judgment of the First District Court of the city of Newark, entered upon the verdict of a jury, in favor of the defendant below, against the plaintiff below, for the sum of $280 damages and costs of suit to be taxed.

The plaintiff had been the defendants landlord and on the theory that the defendant held over, at the expiration of his term for a period of four months, brought her action against him to recover for use and occupation of the premises occupied by the defendant, at a rental value of $70 a month.

To this action the defendant filed a counter-claim, setting up that on the first day of March, 1925, the defendant entered into a lease of the premises, of the store and four rooms on the second floor, at 487 Lakeside avenue, Orange, New Jersey, for a term of three years, at a certain stipulated rent; that in and by this said lease, it was agreed that the plaintiff would cause to be removed from the store on the premises directly adjoining the premises, being 294 Watchung avenue, Orange, New Jersey, the tenant of the plaintiff occupying the same, or would cause him to discontinue selling the same line of goods as that sold by the defendant, the said goods consisting of confectionery, stationery, soft drinks, dry goods, notions, patent drugs, cigars, tobacco, cigarettes, and the like; that relying on the plaintiff's agreement to cause the said tenant to discontinue the sale of these goods, the defendant entered into the lease and has duly paid the rent thereunder; that the plaintiff has not caused the said tenant to discontinue the sale of this line of goods, but has permitted him to continue selling the same, as a result of which the de-

fendants profits at his own business have greatly decreased, amounting at the present time upward to $500.

In response to the demand made by the plaintiff for a bill of particulars, the defendant, in substance, stated in writing the following: "(1) The plaintiff should lease the defendant the premises now occupied by him, for the term of three years, including the store and four rooms at 487 Lakeside avenue, Orange, at the rental of $70 a month for the first year and $75 a month for the second and third years; plaintiff to do all necessary repairs inside and outside, to paint the store and rooms inside and outside, and to repair sewer in cellar. Defendant was to use the premises to sell stationery, confectionery, dry goods, drugs, notions, cigars, cigarettes, tobacco, ice cream soda, &c., as a stationery store. The premises directly next door were not to be used for the purpose of selling anything sold by the party of the second part. Said adjoining premises were to be used for the sale of meats, vegetables, fruits, groceries and delicatessens. (2) Said lease was oral. (3) The occupant of 294 Watchung avenue, was not to sell any of the goods forbidden during the entire occupancy of the premises by the defendant."

On the trial of the case, the defendant admitted that he owed the plaintiff $280 for rent, as is claimed in her state of demand.

On behalf of the defendant, testimony was introduced tending to establish the making of the oral lease, and by way of damages, that the defendant's sales were less than they had been when there was no competition by the plaintiff's tenant, who occupied the adjoining premises, in the same line of business. The defendant having rested, plaintiff's counsel moved to strike out the counter-claim and the testimony introduced for the purpose of establishing the counter-claim. It is true that the counsel's motion to strike out the counter-claim was postulated on the ground that the lease was not in writing and hence came within the statute of frauds; that the contract respecting the tenant of the adjoining premises from selling certain goods was a part of the lease and was

not to be performed within a year and hence was void. There was no motion made to strike out the counter-claim on the ground that it was for unliquidated damages, and therefore could not be properly set up in an action for rent.

It has been held by this court that a cause of action in tort for injuries to an automobile was not a proper subject of counter-claim to an action for broker's commission and that it was not aided by the Practice act of 1912, section 12. See *Rebenfeld* v. *Friedburg*, 3 *N. J. Mis. R.* 94, and cases there cited. It is clear that the agreement to make a lease for three years with an option of two years more was a contract relating to and concerning an interest in land, tenements and hereditaments, and in order to be enforceable, the statute of frauds requires that there should be some memorandum or note thereof in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized. *Cooper* v. *Aiello*, 93 *N. J. L.* 336 (at *p.* 338).

From the testimony in the cause it appears to us, taking the testimony of the defendant as true, that the terms of the proposed lease were of such a nature, especially those relating to the undertaking, on part of the plaintiff, as landlord, to prevent the adjoining premises, owned by her, to be let or used in competition with the defendant's business, that they cannot be separated from the lease itself, and if the lease was unenforceable, the terms on which it was to be made became unenforceable also. For it must be borne in mind that the contract for the lease was an entirety including the conditions upon which the lease itself depended, and therefore it could only be enforced as a whole and if not enforceable as such it cannot be properly enforced in part.

But this view would not be dispositive of the case if it appeared that the defendant had *aliunde*, a right to maintain his action against the plaintiff for a breach of the latter's agreement to execute the lease, and as claimed. The defendant's testimony in this regard is, as follows: "The agreement was that I was to carry a three-year lease, and two-year privilege. The first year was to be $70 and the second

year $75 and the third year $75 and the two years' privilege to carry on the $75 and she was to clean the store and the house, and she agreed to do that." This arrangement for a lease appears to have been made in the month of December, 1924, and the term of the lease was to begin in March, 1925. Thus, it appears that the new lease was to commence *in futoro,* and as there was no part performance of the lease by the defendant, so as to take the case out of the operation of the statute of frauds on the theory that he was in possession of the premises at the time of the commencement of the term of the new lease agreed upon, it follows that the agreement to give the defendant a lease was unenforceable. For the stream can rise no higher than its source. An agreement not in writing, to make a lease for a term of more than three years which the law requires to be in writing is of no more validity than an oral lease for a term exceeding three years, unless it appears that some act was done to take it out of the operation of the statute.

The testimony was undisputed that the oral arrangement for the lease was made three months before such lease was to go into effect.

The trial judge was requested to charge as follows: "If you find as a fact that the parties, although they had agreed on all the terms of the contract, meant to have them reduced to writing and signed before the bargain should be considered as complete, and that the contract was not reduced to writing and signed, you will find for the plaintiff on the counter-claim," which request was refused and an exception was taken to such refusal. The trial judge was also requested to charge: "If you find that the parties had intended to enter into a lease but did not or could not agree upon all the material terms thereof, you will find for the plaintiff on the counter-claim, which request was refused and an exception taken thereto.

We think that the plaintiff was entitled to have both of these requests charged, since it clearly appeared from the testimony that the parties did not come to any agreement on the terms of the lease and since it further appeared that the

damages claimed by the defendant were based upon a term of the proposed lease, which could not be agreed upon, and which was to the effect that the plaintiff would cause a tenant, occupying an adjoining store, to discontinue selling the same line of goods, as that sold by the defendant. It is therefore difficult to see how the loss sustained by the defendant as a result of the competition of the plaintiff's tenant, could properly be made the basis for the recovery of damages by the former.

Moreover, there is an absence of probative testimony tending to show that the defendant sustained any loss by reason of the failure on the part of the plaintiff to cause her tenant, occupying the adjoining store to the defendant's, and in which the latter was carrying on his business, from carrying on and selling the same line of goods as that which the defendant was engaged in. The testimony adduced as to the damages sustained by the defendant is highly speculative and remote and not a proper basis for the award of damages.

For the reasons above indicated, the judgment of the District Court is reversed, and a new trial ordered.